IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RODNEY R. BAER,

                    Petitioner,                          OPINION and ORDER

      v.                                                       20-cv-540-jdp

REED RICHARDSON,

                    Respondent.

---

Rodney R. Baer, a prisoner at Stanley Correctional Institution, seeks habeas relief under 28 U.S.C. § 2254. The matter is fully briefed and ready for decision.

Baer challenges his 2015 Wisconsin state-court conviction for sex offenses against his minor daughters. Baer contends that the state trial court violated his constitutional rights when it excluded evidence that Baer says was relevant to his daughters' credibility about the sexual assault allegations and that the state court of appeals erred in concluding that the exclusion of that evidence was harmless error. The excluded evidence was that Baer's daughters repeatedly sang a comedic song, "Get a New Daddy," around the time they made the sexual assault allegations. The song concerned a boy, unhappy with a strict father, who made false sexual abuse allegations so that his father would be removed from the home.

I conclude, as did the trial court, that the girls' singing of "Get a New Daddy" was at best minimally relevant to the girls' credibility and the sexual assault allegations against Baer. Because the probative value of that evidence was so low, its exclusion did not violate Baer's constitutional rights to mount a defense and to cross-examine the witnesses against him. The state court of appeal's decision that the exclusion of the evidence was harmless error is not factually or legally unreasonable. Baer is not entitled to habeas relief under § 2254.

## A. Background

In June 2014, two of Baer's daughters, ten-year-old AAB and twelve-year-old KHB, accused him of having sexual contact and intercourse with them on multiple occasions between January and June of 2014. At the time they made the allegations, the daughters were living with Baer at the home of Baer's girlfriend, Althea Daleon. Baer was the custodial parent, which caused conflict between Baer and the girls' mother, Kelly. Both Kelly and the girls wanted the girls to live with Kelly. Baer contends that the girls falsely accused him of the sexual assaults so that he would lose custody and they would be placed with Kelly. Indeed, after Baer's arrest, the girls went to live with Kelly.

### 1. Trial court proceedings

Baer's counsel sought to introduce evidence that prior to making the assault allegations the girls repeatedly sang a song entitled "Get a New Daddy," which they had seen and heard performed by a comedy group on YouTube.[1] The lyrics involve a boy, unhappy with a strict father, who lies about being sexually molested so that he would "get a new daddy." Baer argued that this evidence was admissible on several grounds: as other-acts evidence to show intent, motive, opportunity, and knowledge to lie; as evidence of character for truthfulness; or, alternatively, as necessary to his defense as a matter of due process. He sought to introduce evidence about the girls singing the song through Daleon's testimony and through cross-examination of AAB and KHB.

Just before trial, the court held a hearing on Baer's request to introduce evidence of the song. Dkt. 9-9 (transcript of trial day 1). In an offer of proof, Daleon testified that she had

---

[1] The song is available and easily found on YouTube: https://www.youtube.com/watch?v=iNR-x1net-A. Last visited July 12, 2022.

witnessed KHB play the "Get a New Daddy" video in January or February of 2014. She also witnessed KHB playing the video for AAB, and she noticed that KHB had the song's lyrics memorized. Daleon testified that she remembered the song specifically because she had scolded the girls for singing it. The trial court declined to admit the song as other-acts evidence, but it determined that KHB and AAB's singing the song was a specific instance of conduct admissible as evidence of their character for truthfulness under Wis. Stat. § 906.08(2). Dkt. 9-9, at 31. The court ruled that Baer could examine the girls about the song. But it also ruled that Baer would be bound by the girls' answers:

> I'm inclined to let you ask the question. I don't know whether I will let you put [Daleon] up. That's, you know, (2) says the inquiry is limited to the answer. If the kids say they don't recall or didn't sing that song, that's it. And I don't think I'd let you go into the lyrics. You can ask them if they sang that song, if they remember singing that song. But you're bound by the answer under 906.08.

Dkt. 9-9 at 33.

At trial, the government had no physical evidence corroborating the girls' allegations. The primary evidence against Baer was AAB's and KHB's testimony about the sexual abuse, and thus their credibility and Baer's was the central issue at trial. On cross-examination, Baer asked AAB whether KHB had ever showed her funny videos on the computer. Dkt. 9-10 (transcript of trial day 2), at 23. AAB answered "No." Baer attempted to ask AAB whether she knew a song called "Get a New Daddy." The court interrupted and told counsel that he had gotten his answer and told him to move on. Baer asked to be heard further; the jury was excused. Baer asked for clarification, because he understood the court to have allowed him to ask specifically about the "Get a New Daddy" song. The court reiterated its ruling that Baer had asked about the subject matter and gotten his answer and that further inquiry would not

be allowed. Dkt. 9-10, at 23–24. But in explaining its reasoning, the court indicated that it had actually reconsidered its prior ruling:

> You know, I thought about this. I thought about my ruling and, you know, singing any kind of song for a ten year old and then taking the words out when there may be many songs or I'm sure they've heard many songs and they may have heard that song. So what? The relevance to that and, you know, your theory in the case is minimal. You know, the prejudicial value when I balance it with or the prejudicial effect when I balance it with the probative is, value as I said, minimal and I'm not allowing any further questions.

Dkt. 9-10, at 24. The bottom line is that the court had effectively precluded inquiry into the "Get a New Daddy" song. Baer did not raise the subject in his cross-examination of KHB.

Baer himself testified and denied the abuse.

The jury found Baer guilty on all counts. The court sentenced him to 25 years of initial confinement followed by 10 years of extended supervision for one count of repeated sexual assault of a child, and concurrent terms of seven years of initial confinement and three years of extended supervision for the remaining three counts of repeated sexual assault of a child and two counts of incest.

## 2. Appellate proceedings

Baer appealed his conviction to the Wisconsin Court of Appeals, contending that the trial court's evidentiary ruling was erroneous and not harmless and that it violated his constitutional right to present a defense. In an unpublished per curiam decision, the court affirmed Baer's conviction. *State v. Baer*, 2019 WI App 54, 388 Wis. 2d 622, 935 N.W.2d 556. The court concluded that excluding the "Get a New Daddy" evidence had been improper, although it did not thoroughly analyze that issue because the basis for its admissibility in the trial court was not clear. The court chose to proceed under a harmless error analysis, concluding

4

that the error had been harmless for two reasons. First, the evidence was cumulative of other evidence showing that the girls had a motive to falsely accuse their father. Baer and Kelly both testified that the girls wanted to live with Kelly, and "[t]he jury easily could have deduced without hearing the particular song lyrics that, even at ten and twelve, the girls would know sexual assault allegations would result in a change of custody." *Id.* ¶ 11. Second, the song evidence "would not have shored up Baer's claim that the girls were lying," because in the court's view, it "strain[ed] credulity that the girls would sing, in front of their father's girlfriend, a song about falsely accusing a parent of sexual abuse if they were planning to do just that— and then wait months to make the disclosures." *Id.* ¶ 12.

Baer's petition for review in the Wisconsin Supreme Court was denied on December 10, 2019. *State v. Baer*, 2020 WI 9, 390 Wis. 2d 323, 938 N.W.2d 171. Baer timely filed this habeas petition on June 15, 2020.

**B. Analysis**

On habeas review, Baer repeats his claim that the trial court's exclusion of the "Get a New Daddy" evidence violated his constitutional right to present a defense and was not harmless.

The State contends that Baer's claim fails under the deferential standard imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2254. AEDPA requires federal courts to defer to a state court's adjudication of a federal claim so long as it rests on a "reasonable" application of clearly established federal law. *See* § 2254(d). The State argues that this court should deny the petition because the Wisconsin Court of Appeals' harmless error determination was a reasonable application of *Chapman v. California*, 386 U.S. 18 (1967). Alternatively, the State argues, this court should deny relief because Baer's

constitutional right to present a defense was not violated in the first place. *Wilson v. Corcoran*, 562 U.S. 1, 6 (2010) (AEDPA "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law.").

I'll take up the question of whether constitutional error was committed in the first place before turning to the Wisconsin Court of Appeals' harmless error analysis. The State is correct that my review of this first question is *de novo*. "AEDPA's deferential standard of review applies only to claims that were actually 'adjudicated on the merits in State court proceedings.'" *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing 28 U.S.C. § 2254(d)). Here, although the Wisconsin Court of Appeals said that "the violation of a defendant's right to present a defense . . . is subject to a harmless-error analysis," it did not offer any discussion of Baer's right to present a defense. It simply declared that the "Get a New Daddy" evidence "should not have been excluded" and proceeded to assess the harmfulness of the error. *Baer*, 2019 WI App 54, at ¶¶ 8-9. When a state court does not adjudicate the merits of a constitutional claim, federal review is *de novo*. *Harris*, 698 F.3d at 625-26.

### 1. Right to present a defense

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006). The seminal case for the right to present a complete defense was *Chambers v. Mississippi*, 410 U.S. 284 (1973). Chambers, charged with the shooting death of a police officer, sought to present evidence that another individual had repeatedly confessed to the crime, including in a sworn statement to Chambers' counsel, but which he later repudiated. Chambers was not allowed to present that evidence at his trial

because of two of Mississippi's evidentiary rules: its voucher rule, which prohibited a party from impeaching his own witness, and its rule against hearsay. *Id*. at 294. The Supreme Court held that, by applying those rules "mechanistically," Mississippi had substantially burdened Chambers' rights to present witnesses in his own defense and confront the witnesses against him, which deprived him of a fair trial. *Id*. at 302.

As the Seventh Circuit observed in *Kubsch v. Neal*, 838 F.3d 845 (7th Cir. 2016), *Chambers* was not a "one-and-done" Supreme Court opinion; "[t]o the contrary, the rule requiring state evidentiary rules to yield to the defendant's fundamental due-process right to present a defense has arisen in many later cases." *Id*. at 855–56. From those cases, the court of appeals drew the following "narrow set of circumstances" under which due process concerns override state evidentiary rules:

> First . . . the cases in which the *Chambers* principle has prevailed dealt with the exclusion of evidence or the testimony of defense witnesses, not a defendant's ability to present an affirmative defense. Second, we think it no accident that the cases in which the Court has applied *Chambers*—*Green*, *Crane*, *Rock*, and *Holmes*— have involved murder and often the death penalty. Third, the proffered evidence must be essential to the defendant's ability to present a defense; it cannot be cumulative, impeaching, unfairly prejudicial, or potentially misleading. Fourth, as the Court put it in *Chambers* itself, the evidence must be reliable and trustworthy. One, though not the only, way that reliability and trustworthiness can be demonstrated is to show that the evidence closely resembles evidence that would be admissible under the state's rules. Finally, the rule cannot operate in an arbitrary manner in the case at hand. Arbitrariness might be shown by a lack of parity between the prosecution and defense; the state cannot regard evidence as reliable enough for the prosecution, but not for the defense. But that does not exhaust the ways of satisfying this criterion. A refusal to consider corroborating circumstances, an unexplained departure from an established line of decisions, or an assumption about the relative weight of evidence (as in *Crane*) might also suffice.

*Id*. at 858, 862.

Baer's case does not fit cleanly into this set of circumstances. It is not a murder case, although it involves very serious charges. It does involve the exclusion of evidence—Daleon's testimony—and no one suggests that her testimony about hearing the girls sing the lyrics to "Get a New Daddy" about five months before they disclosed the sexual abuse was not reliable or trustworthy. The core questions are whether Baer's proffered evidence was "essential" to his ability to present a defense and, if so, whether its exclusion was "arbitrary" or "disproportionate" to the purposes advanced by the exclusion. *See Harris*, 698 F.3d at 627. A garden-variety evidentiary error that leads to the exclusion of evidence is not enough to warrant habeas relief. *Fry*, 551 U.S. at 126 (Breyer, J., concurring in part and dissenting in part).

To answer these questions, the court begins with the analytical step that the Wisconsin Court of Appeals passed over, by considering the admissibility of the excluded evidence and examining Baer's arguments about what the girls' singing of the "Get a New Daddy Evidence" would actually show. At trial, Baer's counsel contended that the song showed the girl's "intent, motive, opportunity, and knowledge" to lie about the sexual assaults. Dkt. 9-9, at 5. Counsel explained that "It shows that they knew how to change their custodial parent. Regarding motive and intent, obviously this is circumstantial evidence of motive and intent." *Id*. at 12. Baer made a similar argument to the court of appeals, saying "[E]vidence that the girls were aware of this song, and sang it multiple times, tends to show that they were aware of and were celebrating the idea that they could punish Baer by making false accusations." Dkt. 9-2, at 13. Baer makes another similar argument in support of his habeas petition, contending that their singing the song was "the only evidence to show that the girls were aware of a plan to falsely accuse him and the outcome of those accusations." Dkt. 16, at 19–20.

8

Baer's arguments invoke several typical non-propensity purposes for which other-acts evidence might be admitted under Wis. Stat. § 904.04, specifically intent, motive, opportunity, and knowledge. But of these, Baer only explained motive and knowledge. The girls' singing of the song showed, so Baer's argument goes, that they knew that an allegation of sexual assault would lead to a change of custody, thus giving them a motive to report such an allegation.

The argument based on motive is a weak one. The girls' singing the song does not show motive; their motive to change custody actually arises from the girls' desire to live with their mother, Kelly. That the girls wanted to live with their mother was undisputed at trial: both Kelly and Baer testified to that.

The heart of Baer's argument concerns knowledge. Baer contends that the song was how—and indeed was the only way—the girls would know that if they made accusations of sexual abuse, they would get to live with Kelly. He points out that although the jury heard that Kelly wanted to get custody of the girls, it did not hear any evidence that the girls had a "plan" to live with their mother. But the girls' singing the lyrics to "Get a New Daddy"—one of many songs they sang—hardly shows that they had such a "plan." The lyrics of the song did not include arcane knowledge about child custody or sexual matters. And the girls' testimony did not incorporate any of the more specific details from the song lyrics: they did not report sexual touching to a teacher; they did not place sexually explicit photographs among Baer's clothing. The similarity between the girls' testimony and the song lyrics was at the most general level, because both involved allegations of sexual abuse by a parent. But that general similarity does not support an inference that the girls learned from the song that allegations of sexual assault would lead to a change of custody, much less that they used that knowledge as part of a plan to fabricate allegations against their father so they could go live with their mother.

9

In light of these facts, the court agrees with the trial court's conclusion that evidence that the girls sang the "Get a New Daddy" song had only "minimal relevance" to Baer's defense theory. On the other hand, allowing continued cross-examination of the girls (or permitting Baer to call Altheon) posed an undue risk of prejudice and harassment, insofar as it would have allowed the jury to learn that the girls were singing songs that some jurors might find offensive or inappropriate for children of their age. Besides the sexual references, the "Get a New Daddy" song refers to smoking marijuana. The trial court would probably have had to allow the prosecution the opportunity to negate the impact of any testimony about "Get a New Daddy" by introducing evidence of other songs that the girls sang, which would have wasted time and led to confusion of the issues. The court finds nothing arbitrary or disproportionate in the trial court's determination that the marginal relevance of the "Get a New Daddy" evidence was outweighed by the dangers of undue prejudice, confusion, and the waste of time.

Baer's counsel also argued to the trial court that the song was evidence of the girls' character, admissible under Wis. Stat. § 904.04(1)(b) (allowing evidence of a pertinent character trait of the victim). Counsel contended that "It also shows the character trait of flippantly viewing false charges of sexual abuse as the song is obviously very flippant." Dkt. 9-9, at 5. This is not a very coherent argument about how singing the song shows a character trait. Nevertheless, the trial court initially accepted a related rationale, deciding that the girls' singing the song was a specific instance of conduct admissible to attack their credibility under § 906.08(2). Dkt. 9-9, at 31. But ultimately the trial court reconsidered that ruling and cut off examination on the topic, after concluding that the girls' singing the song was at most minimally probative. Dkt. 9-10, at 24. Baer did not argue that the song was admissible as

character evidence in the court of appeals, and he does not press it here, so the court deems it forfeited.

But even if not forfeited, the argument would fail, for reasons recognized by the trial court. The girls' repeated singing of the song shows that they thought singing it was amusing, but it says nothing about their character. Their singing "Get a New Daddy" does not show that they were liars any more than Johnny Cash's singing "Folsom Prison Blues" shows that he was a murderer. The "Get a New Daddy" song is a work of comedic fiction, and one cannot simply ascribe the attitudes of the singer or the song's characters to any person who later sings it.

The bottom line is that Baer failed to show at trial, and he fails to show here, that the girls' singing "Get a New Daddy" had more than minimal relevance to the girls' credibility or to the accusations against him. This is not a case like *Chambers*, in which strict enforcement of Mississippi's evidentiary rules barred critically relevant evidence. Here, the excluded evidence would have done little damage to the State's case because it really didn't establish anything. Moreover, Baer was able to present his defense theory—that his daughters made up the allegations against him so they could live with their mom—through his own testimony and the testimony from Kelly, who said that she had told the girls that she wanted them to be with her, and they had said they wanted the same. Therefore, the court concludes that the excluded evidence was not material to Baer's defense and the trial court did not apply the evidentiary rules arbitrarily or disproportionately. If the trial court erred, it was at most a garden-variety evidentiary error that did not deprive Baer of his constitutional right to present a defense. *Accord Nevada v. Jackson*, 569 U.S. 505, 511 (2013) ("The admission of extrinsic evidence of specific instances of a witness' conduct to impeach the witness' credibility may confuse the jury, unfairly embarrass the victim, surprise the prosecution, and unduly prolong the trial. No

11

decision of this Court clearly establishes that the exclusion of such evidence for such reasons in a particular case violates the Constitution."); *Holmes*, 547 U.S. at 330 (right to present a defense is not violated by evidentiary rules that "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues").

The analysis could stop here, because I conclude that Baer has failed to show a violation of his right to present a defense. But, for completeness and as an alternative basis for my ultimate decision, I will press on to consider the Wisconsin Court of Appeals' harmless-error analysis.

### 2. Harmless error

Even if the state court's exclusion of the "Get a New Daddy" evidence were a constitutional error, Baer cannot obtain habeas relief unless he can show that the Wisconsin Court of Appeals' finding of harmless error (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022) (state court's harmless-error determination qualifies as an adjudication on the merits subject to review under AEDPA). The parties agree that the clearly established law that applies here is *Chapman v. California*, 386 U.S. 18 (1967), which held that, for cases reviewed on direct appeal, a constitutional error is harmless if the state proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. Whether an error is harmless in a particular case depends upon a host of factors, including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence

corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684.

The state court of appeals recognized and applied the correct standard, citing *State v. Stuart*, 2005 WI 47, ¶ 40, 279 Wis. 2d 659, 676, 695 N.W.2d 259, 267, which in turn applied *Chapman*. So the first question is whether the state court applied *Chapman* "unreasonably" when it found the exclusion of the "Get a New Daddy" evidence to be harmless. An "unreasonable application" of clearly established federal law means that the state appellate court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In other words, Baer must persuade this court that no "fairminded juris[t]" applying *Chapman* could reach the same conclusion as the Wisconsin Court of Appeals. *Davenport*, 142 S. Ct. at 1525 (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

If Baer makes the necessary showing that the Wisconsin Court of Appeals unreasonably applied *Chapman*, he must also show, applying the standard in *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), that the exclusion of the song evidence had "a substantial and injurious effect or influence" on the jury's verdict. *Davenport*, 142 S. Ct. at 1517 (when a state court determines trial error was harmless, both AEDPA and *Brecht* must be satisfied before a federal court may grant habeas relief); *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009) (same). The question under the *Brecht* standard is whether, on habeas review, the federal court itself harbors "grave doubts" about whether the trial court error affected the jury's verdict. *Davenport*, 142 S. Ct. at 1525.

13

The Wisconsin Court of Appeals cited three reasons for its conclusion that excluding the "Get a New Daddy" evidence was harmless: (1) it would have been cumulative to other evidence showing a possible motive to falsely accuse their father; (2) the jury easily could have deduced without hearing the particular song lyrics that, even at ten and twelve, the girls would know sexual assault allegations would result in a change of custody; and (3) it would not have shored up Baer's claim that the girls were lying. As to this third point, the court noted that "the girls 'loved singing,' sang many different songs, and watched other videos by the same comedy group," adding that "[i]t strains credulity that the girls would sing, in front of their father's girlfriend, a song about falsely accusing a parent of sexual abuse if they were planning to do just that—and then wait months to make the disclosures." *State v. Baer*, 2019 WI App 54, ¶¶ 11-12, 388 Wis. 2d 622, 935 N.W.2d 556.

In reviewing this rationale, the question under *Chapman* is not whether this court would reach the same conclusion finding the error harmless; rather, it is only whether any fairminded jurist could do so. That is a very high burden for Baer to meet, and intentionally so, for the remedy of habeas corpus is meant only to "guard against extreme malfunctions in the state criminal justice systems." *Richter*, 562 U.S. at 102. Applying this deferential standard, this court cannot say that no reasonable jurist could conclude that the exclusion of the "Get a New Daddy" evidence was not harmless beyond a reasonable doubt. As explained above, this court agrees that if the song were considered evidence of motive, it was cumulative of other, undisputed evidence that the girls wanted to live with Kelly and thus had a motive to prompt a change in placement. As for knowledge, the court of appeals concluded that the jury could infer that the girls, at the ages of ten and twelve, would know that sexual assault allegations would result in a change of custody, even if they had not heard the lyrics of the song. That

14

assessment is based on a reasonable judgment about the knowledge of young adolescents. Finally, it was not outside the boundaries of reasonable disagreement for the court to conclude that it was implausible that the girls would sing a song about making a false allegation of sexual abuse in front of their father's girlfriend if they were actually planning to do so. The evidence against Baer was not overwhelming and his conviction turned on whether the jury found the girls to be credible. Even so, given the marginal relevance of the "Get a New Daddy" evidence, the harmfulness of its exclusion is not apparent beyond fairminded disagreement. Baer cannot meet the *Chapman* standard.

Baer also cannot meet the *Brecht* standard. For reasons explained above, I agree with the trial court's conclusion that the "Get a New Daddy" evidence was, at most, minimally relevant, and it would have been largely cumulative of other evidence. And thus I harbor no doubts, let alone grave ones: the exclusion of this evidence did not have a substantial and injurious effect on the verdict.

Baer is entitled to relief from the harmless error analysis only if he can meet both the *Chapman* and *Brecht* standards, but he has met neither. He is not entitled to habeas relief.

### 3.   Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336

(2003) (internal quotations and citations omitted). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. Reasonable jurists would not debate the outcome here so I will not issue Baer a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

ORDER

IT IS ORDERED that:

1.  The petition for writ of habeas corpus filed by petitioner Rodney R. Baer, Dkt. 1, is DISMISSED.

2.  Petitioner is DENIED a certificate of appealability. If petitioner wishes, he may seek a certificate from the court of appeals under Fed. R. App. P. 22.

    Entered July18, 2022.

    BY THE COURT:

    /s/
    _____
    JAMES D. PETERSON
    District Judge